By the Court.—Freedman, J.
There is little, if any, conflict as to the material facts upon which the right of the plaintiffs to an injunction depends. They are briefly stated as follows:
The Mackinnon Pen Co. is a manufacturing corporation which makes and sells stylographic pens, under certain patents of the United States and other countries. The defendants Sutherland and Brown owned the entire capital stock of this company and its patents, and contracted, July 5,1881, to sell the business and patents to the plaintiff Fren ch. French assigned portions of his contract to the plaintiffs Carleton and Coffin, and the contract was completed September 9, 1881. By this contract French was to give certain notes for part of the consideration money ; but in the completion of the contract Sutherland and Brown accepted, in the place of the notes he was to give, notes of the Mackinnon Pen Co., to whom the patents were conveyed, with an agreement on the part of French, Carleton and Coffin that they womd become and remain trustees of the company for a definite period of time, and would maintain in the company assets equal to all its liabilities, including their notes. As an inducement to them to give this guaranty, Sutherland and Brown agreed that neither of them should engage in business in opposition to that company so long as French, Carleton and Coffin should remain as such trustees. This agreement was made in writing under seal and is the foundation of this action. The notes run for five years from September, 1881, and *446 the plaintiffs last referred to are still the trustees and holders of the stock of the company. The defendant Brown has become the owner of almost-all the stock of the defendant, the Fountain Ink Co., which is a Mew York corporation, making and selling ink. He is the active manager and officer of the company. He has undertaken to advertise and increase the sale of his ink by offering to give away a stylographic pen wi th each bottle, and is publicly representing that these pens, which do not cost over forty cents, and are given away with a quart bottle of ink for $1, are equal to those which the Mackinnon Pen Co. sells at from $2 to $5.
These acts are not a legitimate business enterprise, but an advertising fraud. To carry it out, Brown, the covenantor, hides himself behind the cloak of the Fountain Ink Co., of which corporation he is the only acting officer and the owner of almost all the stock. But he should not be allowed to do through another what he -cannot do himself, whether that other be a clerk, an agent, or a corporation controlled by him for his benefit. The plaintiffs clearly showed that actual damage resulted and continues to result from the wrongful acts-complained of, and it is quite apparent that they have no adequate remedy in an action at law for damages. It is also quite clear that the acts complained of constitute a violation of the covenant. The only remaining question therefore is, whether the covenant is valid in law. The learned judge who denied the motion for the continuance of the injunction during the pendency of the action, placed his decision on the sole ground that the covenant referred to was void as against public policy because it was in restraint of trade. In this I think he erred. The true reason why contracts in gen-' eral restraint of trade are repudiated as contrary to public policy, is that they deprive the public of the enterprise and skill of one of the parties without any-corresponding benefit to the party contracting for such *447 restriction. In such a case the contract injures one party without benefiting the other (Chappel v. Brockway, 21 Wend. 159). Whenever in a given case the reason of the rule fails, the rule falls with it. Thus it is well settled that an agreement in partial restraint of trade, restricting it within certain reasonable limits or times, or confining it to particular persons, is valid, if founded upon a good and valuable consideration. (Story on Contracts, 4 ed. § 155).
The test of the reasonableness of any restriction is, whether it is such as only affords a fair protection to the party in whose favor it is made, and at the same time does not militate against the public interest (Id. § 552). Patented inventions, and secrets of art or trade, not patented, are not within the purview of the rule against restraint of trade ; and a trader may sell a secret in his art, and restrain himself generally from the use of it. These exceptions are allowed for the purpose of stimulating inventive genius, and of encouraging science and well-directed ingenuity (Id. § 556; Alcock v. Giberton, 5 Duer, 76 ; Jarvis v. Peck, 10 Paige Ch. 118).
In the case last referred to it was held that a man engaged in a particular trade or business may relinquish the same to another ; and he may lawfully covenant not to carry .on the same trade or business in such a manner as materially to interfere with the business or profits of the one to whom he has sold out.
So where a retiring partner, on being paid for the good-will of the business, agreed with the remaining partner not to engage in business in opposition to him so near as to take away his customers and injure his trade, it was held that the agreement provided only for a fair protection to the continuing partner, and was not void as against public policy (Dethlefs v. Tamsen, 7 Daly, 354). Even in a case concerning the business of a common carrier the same doctrine was upheld, with. *448 the sole restriction that “ the contract to be upheld must appear from special circumstances to be reasonable and useful, and the restraint of the covenantor must not be larger than is necessary for the protection of the covenantee in the enjoyment of his trade or business” (Dunlop v. Gregory, 10 N. Y. 241).
The covenant in the agreement in suit is expressly limited to such acts as shall be in opposition to the plaintiff corporation. The defendants are under no restraint of trade in any place or in any manner, so long as they respect the good, will of the business for which they have been paid. Besides the covenant is expressly limited as to persons, namely, so long as the individual plaintiffs remain trustees. It is a reasonable protection to the plaintiffs, and the restraint of the covenantors is not larger than is necessary for the protection of the covenantees. Within the principles of the authorities cited, the agreement in question is therefore valid and binding on the defendants who executed it, and all persons and agencies under their control, though no question of infringement of a trade-mark or patent is involved. In Morgan’s Sons Co. v. Troxall, recently decided by the court of appeals, no contract relation existed.
The order appealed from should be reversed with costs, and the motion for the continuance of the injunctions granted. Order to be entered hereon to be settled on notice.
Sedgwick, Ch. J., and Russell, J., concurred.